## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**(UNDER SEAL),**                                                **Civil Case No:**

       **Plaintiffs/Relator,**

   **v.**

**(UNDER SEAL),**

       **Defendant.**

## <u>FALSE CLAIMS ACT COMPLAINT</u>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

:

THE UNITED STATES OF AMERICA,    :    **Civil Case No. _____**
*ex rel.* KELLY R. BROWN,    :

                :

      Plaintiff/Relator,    :    **FILED UNDER SEAL PURSUANT**

                :    **TO 31 U.S.C. § 3730**

                :

      v.    :

                :

FIVE BROTHERS MORTGAGE    :
COMPANY SERVICES AND SECURING    :
INC., FIVE BROTHERS MORTGAGE    :
SERVICES & SECURING, INC.,    :
FIVE BROTHERS LAWN CARE, LLC,    :
FIVE BROTHERS LEASING, INC.,    :
FIVE BROTHERS REALTY, INC.,    :
FORERUNNER SPECIALTY DEFAULT    :
SERVICES, INC., JOSEPH    :
BADALAMENTI, U.S. BANK, N.A.,    :
U.S. BANCORP,    :    **JURY TRIAL DEMANDED**

                :

      Defendants.    :

                :

_____ :

## FALSE CLAIMS ACT COMPLAINT

Relator, Kelly R. Brown, on behalf of the United States of America, brings this action

against Defendants, Five Brothers Mortgage Company Services and Securing, Inc., Five Brothers

Mortgage Services & Securing, Inc., Five Brothers Lawn Care, LLC, Five Brothers Leasing, Inc.,

Five Brothers Realty, Inc., ForeRunner Specialty Default Services, Inc., Joseph Badalamenti,

U.S. Bank, N.A. and U.S. Bancorp, for treble damages, civil penalties and all other available

relief under the United States False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, and, in

support thereof, based upon his personal knowledge, as well as the research and investigation

undertaken upon his behalf, alleges as follows:

I.  **INTRODUCTION**

1.      This is an action for treble damages and civil penalties arising from Defendants'
concerted use of the nationwide housing market collapse and resulting foreclosures to defraud the
United States federal government (the "Government" or "United States") of well over $100
million by engaging in unlawful and fraudulent bidding practices, including deliberate bid-
rigging, in connection with the performance of preservation services for properties insured by the
Federal Housing Administration ("FHA") and the Department of Veterans Affairs ("VA"), as
well as for properties with mortgages that are owned or guaranteed by government-sponsored
and/or related entities, including the Federal National Mortgage Association ("Fannie Mae"), the
Federal Home Loan Mortgage Corporation ("Freddie Mac"), the Government National Mortgage
Association ("Ginnie Mae") and the Federal Housing Finance Agency ("FHFA")(collectively,
the "GSEs").

2.      As detailed below, Five Brothers (as defined below) sought to maximize
government reimbursements by submitting fraudulent and grossly excessive bids for its property
preservation services to its bank-mortgagee clients, including U.S. Bank, as well as, to the best of
Relator's knowledge, information and belief, Bank of America, Ocwen Financial Corporation,
Sterling Bank, Taylor, Bean & Whitaker, Towne Mortgage Company and, more recently, Wells
Fargo & Company, as well as other similarly situated financial institutions, which then present
Five Brothers' fraudulent bids to the U.S. Department of Housing and Urban Development
("HUD") and/or other Government entities, as well as the GSEs, for reimbursement.

3.      Notwithstanding the requirements of and independent bidding required by the

Government, including HUD and the VA, as well as the GSEs, Five Brothers systematically and routinely manipulated contractor bids before submitting them for approval through U.S. Bank and other banking servicers, fabricated bids to present the illusion of a competitive bidding environment, and consistently decreased payments to its contractors while falsely claiming that such adjustments were made directly by HUD, the GSEs or other Government entities. Five Brothers undertook these fraudulent bidding practices to extract the maximum reimbursement amount from HUD, the GSEs and other Government entities based on the submission of false claims.

4.      As a result of these fraudulent bidding practices and submissions, HUD, the GSEs and other Government entities have accepted higher bids for work than they should or otherwise would have, thereby causing the Government to pay grossly excessive monies for property preservation services each year.

5.      Five Brothers' senior management knowingly allowed and actively encouraged these fraudulent bidding practices. Moreover, when alerted to these illegitimate and fraudulent practices, Five Brothers' senior management attempted to bribe contractors who knew of the company's practices, such as Relator, to remain silent.

6.      By devising an ongoing scheme to manipulate the bidding process for its property preservation services and submitting the resulting fraudulent bids to U.S. Bank and other similarly situated banking institutions, which ultimately submitted those bids to HUD, the GSEs and other Government entities for reimbursement, Five Brothers has violated the FCA, including as amended by the Fraud Enforcement and Recovery Act ("FERA"), by causing U.S. Bank and similarly situated financial institutions to present false and fraudulent claims for payment to the

Government.

7.     Had the United States been aware that the bids were grossly excessive and the result of Five Brothers' fraudulent bid manipulation scheme in an attempt to extract the highest monetary reimbursements possible from HUD, the GSEs and other Government entities, the United States would not have accepted the fraudulent bids and paid the excessive amounts submitted by Five Brothers for its property preservation services.

## II.     THE PARTIES

8.     Relator, Kelly R. Brown ("Relator"), is a resident of Hastings, Michigan who performed services for Five Brothers from March 21, 2008 to May 1, 2012 as a contractor.  In this capacity, Relator performed property preservation services that included lawn maintenance, trash outs, property securing, winterizations, rehabilitation, and remodeling services.  Relator was responsible for performing property preservation services in 41 counties in Michigan and six counties in Florida.

9.     Defendant, Five Brothers Mortgage Company Services and Securing, Inc. (a/k/a Five Brothers Field Services a/k/a Five Brothers a/k/a Five Brothers Default Management Solutions p/k/a Equitable Management Service, Inc.), is a corporation organized and existing under the laws of the State of Michigan (Corporation I.D. No. 337471), which was incorporated on November 4, 1986 with Defendant, Joseph Badalamenti, serving as its registered agent.  Five Brothers Mortgage Company Services and Securing, Inc. maintains its headquarters and principal place of business at 14200 E 11 Mile Road, Warren, MI 48089 and conducts business throughout the United States, including the State of New Jersey.

10.     Defendant, Five Brothers Mortgage Services & Securing, Inc., is a corporation

-4-

organized and existing under the laws of the State of Michigan (Corporation I.D. No. 453118),

which was incorporated on December 13, 1989 with Defendant, Joseph Badalamenti, serving as

its registered agent.  Five Brothers Mortgage Services & Securing, Inc. maintains its

headquarters and principal place of business at 14200 E 11 Mile Road, Warren, MI 48089 and

conducts business throughout the United States, including the State of New Jersey.

      11.     Defendant, Five Brothers Lawn Care, LLC, is a limited liability company

organized and existing under the laws of the State of Michigan (Company I.D. No. E2105G),

with Defendant, Joseph Badalamenti, serving as its member.  Five Brothers Lawn Care, LLC

maintains its headquarters and principal place of business at 14200 E 11 Mile Road, Warren, MI

48089 and conducts business throughout the United States, including the State of New Jersey.

      12.     Defendant, Five Brothers Leasing, Inc. (p/k/a Five Brothers Mortgage Services

and Securing, Inc. and p/k/a/ Five Brothers Landscaping, Inc.), is a corporation organized and

existing under the laws of the State of Michigan (Corporation I.D. No. 081326), which was

incorporated on July 1, 1973 with Defendant, Joseph Badalamenti, serving as its registered agent.

Five Brothers Leasing, Inc. maintains its headquarters and principal place of business at 14200 E

11 Mile Road, Warren, MI 48089 and conducts business throughout the United States, including

the State of New Jersey.

      13.     Defendant, Five Brothers Realty, Inc. (a/k/a FiveHomes.com a/k/a

FiveSkan.com), is a corporation organized and existing under the laws of the State of Michigan

(Corporation I.D. No. 13507C), which was incorporated on May 17, 2002 with Defendant,

Joseph Badalamenti, serving as its registered agent.  Five Brothers Realty, Inc. maintains its

headquarters and principal place of business at 14200 E 11 Mile Road, Warren, MI 48089 and

conducts business throughout the United States, including the State of New Jersey.

14.     Defendant, ForeRunner Specialty Default Services, Inc., is a corporation organized and existing under the laws of the State of Michigan (Corporation I.D. No. 03355Y), which was incorporated on May 3, 2010 with Defendant, Joseph Badalamenti, serving as its registered agent.  ForeRunner Specialty Default Services, Inc. maintains its headquarters and principal place of business at 14200 E 11 Mile Road, Warren, MI 48089 and conducts business throughout the United States, including the State of New Jersey.

15.     Defendant, Joseph Badalamenti, is an individual residing at 22733 E 12 Mile Road, Saint Clair Shores, MI 48081-2513.  Defendant, Badalamenti, owns, supervises and controls Defendants, Five Brothers Mortgage Company Services and Securing, Inc., Five Brothers Mortgage Services & Securing, Inc., Five Brothers Lawn Care, LLC, Five Brothers Leasing, Inc., Five Brothers Realty, Inc. and ForeRunner Specialty Default Services, Inc. (and possibly other related companies), all of which function as a single employer, as an integrated enterprise and alter egos of each other and are used to perpetrate the fraud on the Government described herein.

16.     Defendants, Five Brothers Mortgage Company Services and Securing, Inc., Five Brothers Mortgage Services & Securing, Inc., Five Brothers Lawn Care, LLC, Five Brothers Leasing, Inc., Five Brothers Realty, Inc., ForeRunner Specialty Default Services, Inc. and Joseph Badalamenti, are referred to herein collectively as "Five Brothers."

17.     Five Brothers is a nationwide residential and commercial property preservation service provider incorporated under the laws of Michigan and that maintains its headquarters at 14156 East Eleven Mile Road in Warren, Michigan.  Five Brothers conducts its property

preservation business throughout the United States, including in the District of New Jersey. The property preservation services that Five Brothers offers include winterizations, debris removal, lawn maintenance, securing and re-securing properties, snow removal, HUD "convey maintenance" and corrective maintenance services that are designed to enhance a property's appearance for sale. Five Brothers uses so-called "contractors," such as Relator, to perform virtually all of these various property preservation services at properties on behalf of its bank clients and similarly uses contractors to perform the vast majority of related maintenance services at the properties of its bank clients. In or around February 2013, Five Brothers reported that it performed more than 100,000 inspections per month and had approximately 20,000 houses under its care for property preservation purposes at any given time. As of February 2013, Five Brothers engaged the services of approximately 6,000 contractors, agents, and inspectors to perform property preservation services, approximately 5,000 of whom were contractors, to the best of Relator's knowledge and estimation.

18.     Defendant, U.S. Bancorp, is a Delaware corporation with its principal place of business located in Minneapolis, Minnesota. U.S. Bancorp is one of the nation's largest bank holding companies in the nation, with approximately $354 billion in assets as of December 31, 2013.

19.     Defendant, U.S. Bank, N.A., is the wholly-owned subsidiary of U.S. Bancorp and maintains its principal place of business in Cincinnati, Ohio.

20.     US Bancorp and U.S. Bank, N.A. are referred herein collectively to as "U.S. Bank."

21.     U.S. Bank is the fifth largest commercial bank in the United States with $250.5

billion in deposits as of December 31, 2013, and is one of the nation's largest FHA lenders, including with respect to properties in the State of New Jersey for which it originates and/or services loans. U.S. Bank issues work orders to and requests bids from Five Brothers to perform various property preservation services on these foreclosed, FHA-insured properties, as well as other properties for which mortgages are owned or insured by the GSEs or other Government entities. U.S. Bank then seeks federal reimbursement for the work performed by Five Brothers from HUD, the GSEs or other Government entities and, in turn, provides such reimbursement to Five Brothers for its services. As a mortgagee or servicer on the FHA-insured properties and other properties for which mortgages are owned or insured by GSEs or other Government entities, U.S. Bank is required to comply with specific property preservation requirements set forth by HUD and other, similar requirements established by the GSEs and other Government entities. U.S. Bank submits claims for reimbursement for property preservation work to the GSEs, which maintain guidelines similar to those of the FHA and VA for reimbursement, including requirements for competitive bids and that all claims for reimbursement be reasonable in terms of price and for work reasonably and necessarily performed. *See* https://www. fanniemae.com /content/ tool/ property-preservation-matrix.pdf; http://www.freddiemac.com /learn/pdfs/service/104sf_desk_reference.pdf; http://www.namfs.org/Portals/0/Committees/ Government/ Fannie%20Mae%20and%20Freddie%20Mac%20Servicing% 20Updates% 20-%20November%202013.pdf; http://www.benefits.va.gov/homeloans/documents/docs/ va_servicer_guide.pdf.

## III.    SOURCE OF RELATOR'S ALLEGATIONS

22.    The information related in this Complaint is derived from the original and first-

hand knowledge and information of Relator by virtue of his employment relationship with Five Brothers, supplemented by additional factual investigation undertaken on his behalf and at his direction.  Prior to the filing of this Complaint, Relator, through his counsel, advised the United States that he would be filing a complaint and apprised the United States of the substance and nature of his allegations.

## IV.     JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 31 U.S.C. §§ 3729-33 (the FCA).

24.     This Court has personal jurisdiction over the parties because all Defendants transact business in the District of New Jersey and have done so at all times relevant to this Complaint.

25.     Venue is proper within this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b)(2) because all Defendants transact business in the District of New Jersey and a number of the proscribed acts alleged herein occurred in this District.

## V.     FILING UNDER SEAL

26.     In accordance with 31 U.S.C. § 3730(b)(2), this Complaint is filed *in camera* and will remain under seal and will not be served on Five Brothers and the other Defendants until the Court so orders.

27.     A copy of the Complaint and a written disclosure of substantially all material evidence and information in the possession of Relator will be served on the United States pursuant to 31 U.S.C. § 3730(b)(2) and Federal Rule of Civil Procedure 4(i).

28.     This suit is not based upon a prior public disclosure of allegations or transactions

in a criminal, civil or administrative hearing, lawsuit or investigation, in a Government

Accountability Office or Auditor General's report, hearing, audit, or investigation, from the news

media, or in any other location as the term "publicly disclosed" is defined in 31 U.S.C. §

3730(e)(4)(A).

29.     Relator has met all jurisdictional and other prerequisites to filing suit.

**VI.     FRAUDULENT CONCEALMENT -
          TOLLING OF STATUTE OF LIMITATIONS**

30.     To cover up the scheme and actions described in this Complaint, Five Brothers

and U.S. Bank took affirmative actions to conceal their fraudulent practices, remained silent

when required to speak, and failed to disclose material facts despite their duty to do so under the

statutes, regulations, and terms governing the agreements between HUD, the GSEs and other

Government entities with Five Brothers and/or U.S. Bank and under the FCA.

31.     Because Five Brothers and U.S. Bank withheld and concealed all information

about its fraudulent bidding practices, the Government was prevented from discovering

Defendants' false claims, despite an exercise of reasonable care and diligence.

32.     At all material times and throughout the relevant time period (since at least 2009

and likely dating back to 2000 if not beforehand), Defendants had knowledge of the actions and

of the facts giving rise to the claims asserted in this Complaint.

33.     Relator is the original source of the information contained in this Complaint.

Prior to the filing of this Complaint and/or without the knowledge of Relator, the Government

did not and would not know of the facts surrounding Defendants' false claims and fraudulent

bidding practices, and, in the exercise of reasonable care and diligence, could not have known of

Defendants' false claims and fraudulent practices or of the injuries that the Government had
suffered as a result of Defendants' false claims.

## VII.   AGENCY ALLEGATIONS

34.     Five Brothers' other employees and officers were the agents, servants, employees,
successors, assignees, transferees, and/or joint venturers of Five Brothers, and each was, as such,
acting within the course, scope and authority of said agency, employment, and/or joint venture
and was acting with the consent, permission, and authorization of Five Brothers.  Five Brothers
ratified and approved all actions in furtherance of the scheme alleged in this Complaint by such
agents, servants, employees, successors, assignees, transferees, and/or joint venturers.

35.     U.S. Bank's other employees and officers were the agents, servants, employees,
successors, assignees, transferees, and/or joint venturers of U.S. Bank, and each was, as such,
acting within the course, scope and authority of said agency, employment, and/or joint venture
and was acting with the consent, permission, and authorization of U.S. Bank.  U.S. Bank ratified
and approved all actions in furtherance of the scheme alleged in this Complaint by such agents,
servants, employees, successors, assignees, transferees, and/or joint venturers.

## VIII.   THE RELEVANT REGULATORY BACKGROUND

36.     During the relevant time period, Defendants entered into contracts and
subcontracts with HUD, the GSEs and other Government entities, the terms of which, and by
virtue of controlling laws and regulations, required them to comply with the FCA, as well as
various HUD and similar requirements and regulations.

37.     FHA is part of HUD and provides mortgage insurance on loans made by FHA-
approved lenders like U.S. Bank (according to HUD's website listing FHA lenders).  Eligible

individuals may take out a loan insured by FHA from FHA-approved lenders.  If a mortgagor

defaults on the loan, the mortgagee must take certain actions prior to foreclosing on the property

as a last resort.  *See* HUD Handbook 4330.1, Rev-5, Chs. 9-2, 9-3.

38.     Under HUD Handbook 4330.1, Rev-5, Ch. 9-9 ("Inspection, Preservation and

Protection Requirements"), the mortgagee is responsible for taking certain actions to protect the

value of the security prior to conveying title to HUD, including inspections to determine whether

the property has become vacant or abandoned.  *Id.* at 9-9(A).  Once the mortgagee has

determined that the property is vacant or has been abandoned, the mortgagee must take all

reasonable action to secure the property and protect it from damage, including initiating

foreclosure proceedings within nine months after the date of default or within 120 days after the

date the property became vacant.  *Id.* at 9-9(B).

39.     HUD designates a Mortgagee Compliance Manager ("MCM") as the single point

of contact to administer all mortgagee compliance functions, including property preservation

activities.  The MCM audits all Single Family Applications for Insurance Benefits (Form HUD

27011) to evaluate the claimed amounts against the allowable charges to ensure that the

Department is not overcharged.  *See* Mortgagee Letter 2010-18 at 2.

40.     After ensuring that the property is in conveyable condition, the servicer of an

FHA-insured loan conveys the foreclosed property to HUD in order to receive its insurance

payment and property preservation reimbursements from HUD.  Mortgagees/loan servicers must

fill out HUD Form 27011, which contains a claim for reimbursement for preservation work.  On

page 4 of HUD Form 27011, the mortgagee must make the following certification in connection

with its request for reimbursement:

> The undersigned certifies that the amounts listed above
> represent all the expenses actually paid by on or behalf of
> the mortgagee in connection with the foreclosure,
> acquisition, conveyance, assignment operation, protection,
> or preservation of the property identified by the above FHA
> case number and that the information shown above is true
> and correct, and the undersigned agrees that upon request of
> HUD it will furnish receipted invoices for any amounts
> shown above.
>
> **Warning:** HUD will prosecute false claims and statements.
> Conviction may result in criminal and/or civil penalties. (18
> U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802)
>
> By signing below, the undersigned certifies that the
> statements and information contained hereon (face and
> reverse) are true and correct.

HUD Form 27011, at p. 4.[1]  For property preservation services that exceed the $2500 cost limit

set forth in Mortgagee Letter 2010-08, the mortgagee must make such a request for over-

allowables by submitting HUD Form 50002 (via P250 portal) to the MCM for approval.

41.     Like FHA, the VA also provides a home loan guaranty benefit for service

members, veterans, and eligible surviving spouse, to enable private lenders (like U.S. Bank) to

provide more favorable terms to the prospective homeowner.

42.     Loan holders are responsible for inspecting the property securing a VA-

---

[1]In addition to specifically addressing liability under the FCA, the other statutes
referenced in this HUD form relate to federal criminal offenses associated with making false
statements. *See* 18 U.S.C. § 1001 (addressing acts of falsification, concealment and fraud); 18
U.S.C. § 1010 (addressing false and fraudulent activities in connection with obtaining payments
from or influencing HUD); and 18 U.S.C. § 1012 (addressing the making of false entries in any
book, report or statement to HUD).

guaranteed loan as well as taking any appropriate measures to protect and preserve the security for the loan. *See* VA Circular 26-09-12, at pp. 3, 5. "The decision as to what action to take to preserve and protect the property is the holder's decision, and it is independent of the amount that VA reimburses." *Id.* at 5.

43.     Like HUD, the VA reimburses for property preservation costs, which are submitted along with the claim for the VA guaranty payment via the VA web submission/reporting portal, "VALERI." The VA also sets maximum allowable reimbursement amounts, requires that all services be necessary and requires certifications prior to remitting payment for property preservation services.

44.     VA loan holders may advance any amount "reasonably necessary and proper for the maintenance or repair of the security of the property" as well as the "reasonable and customary costs of property inspections" and "any other advances determined by [the] VA to be necessary and proper in order to preserve or protect the security." 38 C.F.R. ¶ 35.4814(a)-(d). These loan holders may then charge these costs against the proceeds of the sale of the home or be included in "any accounting to the Secretary after payment of a claim under the guaranty." *Id.*; ¶ 35.4724 (describing guaranty claim amounts and subsequent accounting procedures).

45.     Loan holders are required to protect and preserve properties and report to the VA upon occurrence of specific events set out in 38 CFR ¶ 36.4817(c) (*e.g.*, foreclosure, bankruptcy, abandonment of property, etc.). *See also* 38 C.F.R ¶ 36.4600.

46.     Ginnie Mae is a wholly-owned government corporation within HUD. Ginnie Mae guarantees investors the timely payment of principal and interest on residential mortgage-backed securities (MBS) supported by federally insured or guaranteed loans (*i.e.*, loans insured by FHA

-14-

or VA, as well as Department of Agriculture's Rural Development and HUD's Office of Public and Indian Housing).

47.      Ginnie Mae does not originate or purchase loans, nor does it purchase, sell, or issue securities.  Instead, private lending institutions approved by Ginnie Mae originate eligible loans, pool them into securities, and issue the Ginnie Mae MBS.  Accordingly, any property preservation issues are governed primarily by the governmental agency providing the loan insurance/guaranty (*e.g.*, the FHA or VA).  As a result, although Ginnie Mae may not generally make servicing decisions or set standards for mortgage servicing, Ginnie Mae originated loans are regularly impacted by Defendants' fraudulent activities.

48.      Fannie Mae purchases and guarantees mortgages that meet certain funding criteria, and securitizes those mortgages to form MBS.  Fannie Mae holds portfolios of various mortgage loans, including those insured by FHA, guaranteed by VA, and other mortgage insurers.  *See* Fannie Mae Single Family 2012 Servicing Guide, Section 609.01.

49.      Upon Fannie Mae's approval, a loan servicer executes a Lender Contract with Fannie Mae to service its residential home mortgage loans.  The servicer/lender must comply with the terms of the Lender Contract, as well as the requirements in Fannie Mae's Selling Guide, Servicing Guide, and various other guides issued by Fannie Mae.  A servicer is required to preserve and protect any property that is securing a loan held in Fannie Mae's portfolio when the loan is in default.  *See* Fannie Mae Single Family 2012 Servicing Guide, Section 202.04. Fannie Mae reimburses the servicer for the associated costs and expenses advanced by the servicer.  *Id.*  Throughout the foreclosure process, the servicer is responsible for performing all property preservation and maintenance functions until it is conveyed to the insurer/guarantor

-15-

(like HUD or VA).  *Id.* at Section 108 ("Property Maintenance and Management").

50.     Fannie Mae sets allowable amounts for property preservation work.  *See* Property Maintenance and Management: Property Preservation Matrix and Reference Guide (Feb. 1, 2013).  All requests for reimbursements for its advances on property preservation expenses must be submitted using the *Cash Disbursement Request* (Form 571, attached), and only "after the claim has been filed with the insurer or guarantor."  Fannie Mae Single Family 2012 Servicing Guide, Section 110.04.  Any requests for work exceeding the Fannie Mae allowables must be submitted via the electronic HomeTracker system or, if the servicer does not have access to the HomeTracker system, complete and submit the *Property Preservation for Repair* (Form 1095). *Id.* at Section 108.  Fannie Mae specifically requires "all pertinent supporting information that would assist Fannie Mae in making a sound property preservation decision" to be included in the request for repair.  *Id.*  Fannie Mae will then let the servicer know whether additional bids are necessary or if the amount is approved.

51.     Freddie Mac operates in a similar manner to Fannie Mae.  Freddie Mac also requires loan servicers to take various actions to preserve and maintain the property during the foreclosure process and comply with any property preservation requirements of FHA, VA, and other governmental agencies, if applicable.  Single-Family Seller/Servicer Guide, Vol. 2, Sec. 66.34.  Expenses must be within the limits set out by Freddie Mac.  *See id.* Ex. 47.  Any work that exceeds the limits must be approved by Freddie Mac by submitting a request for preapproval of costs via Freddie Mac's online "Reimbursement System."  *Id.* at Sec. 71.17.  The servicer must make requests for reimbursement of all allowable property preservation expenses through the Reimbursement System.  *Id.* at Sec. 66.36; *see also* Expense Reimbursement Desk Reference

(Mar. 2014).[2]

52.     To claim reimbursement with respect to FHA-insured properties, all property and

preservation actions must abide by the guidelines as provided in 24 CFR §§ 203.377-203.381,

annual Mortgagee Letters issued by HUD, the HUD Housing Handbooks, and any subsequent

guidance as directed by HUD.

53.     HUD issues annual "Mortgagee Letters" that inform lenders of guidelines and

regulations for performing preservation work on properties secured by FHA-insured mortgages,

including the proper procedures and guidelines for submitting cost reimbursements to HUD.

54.     At the time of conveyance to HUD, properties must meet certain criteria,

including that they are undamaged by fire and earthquake, debris must be removed from the

interior of the property, and the property must be in a broom-swept condition.  *See* Mortgagee

Letter 2010-18 (May 13, 2010), at 2.

55.     With respect to claims submissions, HUD requires repayment of reimbursements

if the amounts paid were "unnecessary or excessive," or if services claimed by the

---

[2]FHFA is an independent federal agency that regulates, among others, Fannie Mae and
Freddie Mac.  FHFA became conservators over Freddie Mac and Fannie Mae, and assumed all
the powers of the shareholders, directors, and officers with the goal of preserving and conserving
the assets and property of Fannie Mae and Freddie Mac.  Per Section 1367 of the Federal
Housing Enterprises Financial Safety and Soundness Act of 1992 (12 U.S.C. § 4501, *et seq.*) and
regulations published by the FHFA (12 C.F.R. Part 1237), the conservator has three general sets
of powers.  First, the Conservator (or Receiver) is the immediate successor to all rights, titles,
powers, and privileges of the entity, and any stockholder, officer, or director.  *Id*.  Second, the
Conservator may operate the entity – including conducting all business of the entity, taking over
the assets, and operating with all the powers of the shareholders, directors, and the officers. The
conservator may also collect obligations due to the entity, and contract out any function or duty
of the entity.  *Id*.  Third and finally, the Conservator may take such action as necessary to: (1) put
the entity in a sound and solvent condition, and (2) carry on the business of the regulated entity
and preserve and conserve the assets and property of the regulated entity.  *Id*.

reimbursements were not performed or not performed properly.  *See* Mortgagee Letter 2010-18, at 13.

56.     With respect to bidding in property preservation, HUD requires mortgagees to "obtain one bid or two bids" and "*[i]f two bids are required they must be independent competitive bids and must be submitted to HUD separately*."  *See* HUD Housing Handbook 4330.4 (FHA Single Family Insurance Claims), at 2-28 (emphasis added).

57.     Pursuant to HUD Guidelines, a mortgagee, such as U.S. Bank, is responsible for Five Brothers' fraudulent actions: "A mortgagee may utilize any individual or firm to accomplish preservation and protection services.  However, the mortgagee shall remain fully responsible for the actions of its agents and the actions of its agent shall be considered the actions of the mortgagee."  Mortgagee Letter 91-49 (December 5, 1991), at 3.

58.     The GSEs and other Government entities providing reimbursement directly or indirectly for property preservation services to Five Brothers, U.S. Bank and other similar financial institutions utilizing the services of Five Brothers maintain the same or similar requirements and guidelines as those created and promulgated by the FHA and none of the GSEs and other Government entities providing reimbursement directly or indirectly for property preservation services to Five Brothers, U.S. Bank and other similar financial institutions utilizing the services of Five Brothers permit the fraudulent bid manipulation, bid rigging and false claim practices perpetrated by Five Brothers and the financial institutions utilizing its services.

59.     The FCA provides, in pertinent part, that:

        (a) Any person who (1) knowingly presents, or causes to be
        presented, to an officer or employee of the United States
        Government or a member of the Armed Forces of the United States

-18-

> a false or fraudulent claim for payment or approval; (2) knowingly
> makes, uses, or causes to be made or used, a false record or
> statement to get a false or fraudulent claim paid or approved by the
> Government; (3) conspires to defraud the Government by getting a
> false or fraudulent claim paid or approved by the Government;
>
> \*       \*       \*
>
> is liable to the United States Government for a civil penalty of not
> less than $5,000 and not more than $10,000, plus 3 times the
> amount of damages which the Government sustains because of the
> act of that person.

31 U.S.C. § 3729; *see also* 28 C.F.R. § 85.3(a)(9) (2010) (raising penalties from range of $5,000

to $10,000 to range of $5,500 to $11,000 to account for inflation).

> 60.    Pursuant to the Fraud Enforcement and Recovery Act ("FERA") and its

accompanying amendments to the FCA in 2009, false claims made to private companies using

Government money to pay such claims give rise to FCA liability.  Specifically, FERA expanded

FCA's meaning of a "claim" to include, in pertinent part:

> any request or demand, whether under a contract or otherwise, for
> money or property and whether or not the United States has title to
> the money or property, that . . . is made to a contractor, grantee, or
> other recipient, if the money or property is to be spent or used on
> the Government's behalf or to advance a Government program or
> interest, and if the United States Government provides or has
> provided any portion of the money or property requested or
> demanded; or will reimburse such contractor, grantee, or other
> recipient for any portion of the money or property which is
> requested or demanded . . .

31 U.S.C. § 3729(b)(2).

> 61.    While the FCA imposes liability only when a person acts "knowingly," it does not

require that the person have actual knowledge that the claim is false nor any specific intent to

defraud the Government.  A person or entity who acts in reckless disregard, or in deliberate

ignorance of the truth of the information, can also be found liable under the FCA. 31 U.S.C. §

3729(b). In short, the FCA imposes liability on any person or entity that submits, or causes

another person or entity to submit, a claim to the Government that is known or should be known

to be false. The FCA reaches all fraudulent attempts to cause the Government to pay out sums of

money, and liability is not limited to statements or claims made directly by a defendant to the

Government.

62. At all times relevant to the Complaint, Defendants acted with the requisite

knowledge, as that term is defined by the FCA, in submitting, or causing to be submitted, false

claims to the Government as described herein, including, *inter alia*, claims in violation of

guidelines and regulations of HUD, other Government entities and the GSEs for performing

property preservation work and bidding practices.

## IX.    ADDITIONAL FACTUAL ALLEGATIONS

### A.    Five Brothers' Scheme to Manipulate Bids in Order to Fraudulently Obtain Excessive Payments From HUD, the GSEs and Other Government Entities

63. For years, in order to receive the greatest financial benefit at the expense of

taxpayers and the Government, Five Brothers has engaged in a scheme to defraud HUD by

manipulating bids for property preservation services on FHA-insured properties and submitting

those bids to U.S. Bank and other similarly situated financial institutions (including, but not

limited to, Bank of America, Ocwen Financial Corporation, Sterling Bank, Taylor, Bean &

Whitaker, Towne Mortgage Company and, more recently, Wells Fargo & Company), which, in

turn, submit those false bids to HUD for reimbursement. Five Brothers has engaged in the same

scheme with respect to the GSEs and other Government entities reimbursing financial

-20-

institutions for property preservation services.

64.     The mechanics of how Five Brothers executed this scheme to receive excessive

reimbursements from HUD is explained in the following illustrative example.  First, Five

Brothers would receive a bid from one of its "contractors" (who, in essence, are actually

employees of Five Brothers) to perform the property preservation work requested by U.S. Bank.

Second, after receiving the bid and unbeknownst to the contractor, Five Brothers would then

manipulate the bid by artificially inflating the amount and transferring the inflated bid to a Five

Brothers bid sheet.  Third, the Five Brothers bid sheet is then sent to a "liaison" at U.S. Bank.

These liaisons work in U.S. Bank and submit the Five Brothers' bids to HUD for reimbursement,

but the liaisons are actually hired and paid by Five Brothers and are not actual U.S. Bank

employees. Since at least 2000 and likely beforehand, Five Brothers submits these manipulated

bids to HUD via these liaisons, over which U.S. Bank and other similarly situated financial

institutions have maintained a complete lack of oversight.  Fourth, liaisons employed by Five

Brothers at U.S. Bank enter the inflated bids from the Five Brothers bid sheet into the P260

system,[3] through which HUD can either accept or reject the bid.  Fifth, if HUD rejects the bid as

being excessive, it would require the liaison at U.S. Bank to request a second bid from Five

Brothers in an attempt to obtain a lower bid for the necessary work.  Sixth, in response, Five

Brothers would then obtain a new bid from a second contractor in an amount higher than the

original, unaltered bid from the first contractor but less than the inflated amount that Five

Brothers fabricated and HUD rejected.  Seventh, HUD then accepts the second bid, believing it

---

[3] The P260 portal is the federal online data entry system introduced in 2010 by which
property preservation companies, such as Five Brothers, can submit requests for reimbursable
expenses and obtain reimbursements from HUD.

to be the lower bid, having never seen the original unaltered bid.[4]  Eighth, in addition to profiting more on a higher bid extorted from HUD, Five Brothers also collects "trip fees" from HUD for sending a second contractor to a property site to obtain a second bid at HUD's request.  As detailed further below, however, such trip fee charges were oftentimes also fraudulently charged to and paid by HUD, as Five Brothers would often fabricate the second bids without actually sending a contractor to the property.

65.    In the alternative, if HUD accepts the original, inflated/falsified bid, Five Brothers *still* profits substantially because, of course, Five Brothers never discloses to its contractors that HUD accepted a bid amount that was higher than the contractors' original bid.  Accordingly, Five Brothers only reimburses its contractors based on the original, non-inflated amount, while Five Brothers retains the remainder of the artificially-inflated reimbursement amount paid by HUD (Five Brothers receives 20% of all bids accepted by HUD as a "service fee" pursuant to its agreements with its contractors).[5]  Even more egregiously, as detailed below, Five Brothers often pays its contractors *even less* than the 80% of the original uninflated bid amount by fraudulently representing to the contractor that HUD, another Government entity or one of the GSEs adjusted and decreased the contractors' original uninflated bid.

---

[4] For better understanding of Five Brothers' bid manipulation scheme, an example is provided as follows: Contractor A sends Five Brothers a $50 bid for specific property preservation work.  Five Brothers then manipulates the bid by increasing it to $100, before transferring it to its bid sheet that is submitted to HUD via the liaison at U.S. Bank.  When HUD rejects the $100 bid as excessive and requests a second bid, Five Brothers then obtains a $75 bid from Contractor B.  HUD then approves the $75 bid because, as far as HUD knows, the second $75 bid was the lower of the two bids, having never seen the original $50 bid from Contractor A.

[5] Using the hypothetical numbers in the previous footnote, Five Brothers would then be reimbursed $100 from HUD, but would only have to remit $40 to Contractor A, since it need only pay 80% of Contractor A's original $50 bid.

66.     Five Brothers has a compelling and perverse interest to fraudulently increase the amount of all bids submitted by its contractors, without concern as to whether those bids are accepted or rejected, so that it can maximize profits for itself at the expense of HUD, other Government entities, the GSEs and taxpayers.

**B.     Five Brothers' Fraudulent Solicitation of "Second Bids"**

67.     As described above, HUD requires Five Brothers to submit a second bid if HUD deems the first bid to be excessively high.

68.     Relator has first-hand knowledge that Five Brothers regularly solicits second bids as part of the practices described above.

69.     Relator began suspecting Five Brothers' fraudulent scheme when he and another contractor, Paula Taylor of PMT Preservation, LLC ("PMT"), had numerous bids rejected in direct contradiction of Five Brothers' policy of retaining a single contractor to work on an FHA-insured property from initial secure through conveyance to HUD (so long as the bids complied with HUD guidelines), unless U.S. Bank or HUD requests a second bid.  In other words, although Relator and PMT completed initial secures on an FHA-insured property, their subsequent bids on items they knew to be necessary for conveyance to HUD were rejected by Five Brothers, despite being within HUD guidelines, and they were never assigned to return to do work on those properties.  Because such practice directly contradicts Five Brothers' policy, which had been in effect since at least August 24, 2011, significant red flags were raised.

70.     Relator believes that, in those instances where his bids were rejected, U.S. Bank or HUD had requested a second bid as a result of Five Brothers' manipulation of Relator's original bid in an effort to have the inflated bid accepted or, in the alternative, for HUD to reject

-23-

the inflated bid and request a second bid.

71.     In these instances in which a second bid was accepted, Relator never received the work despite performing the initial secure on a given FHA-insured property; instead, the subsequent work was ultimately given to another contractor.[6]  In many of these instances, as detailed further below, Five Brothers would choose the highest of multiple bids submitted by contractors as part of its fraudulent scheme to maximize government reimbursement.

72.     In addition to earning greater fees through submission of an inflated bid, as detailed above, Five Brothers utilized this "second bid" practice in order to charge HUD the additional trip fee to secure the second bid.

73.     Five Brothers, U.S. Bank and other similarly situated financial institutions submitted similarly manipulated and false bids to the GSEs and other Government entities besides HUD and profited from the submission of these false claims.

C.     **Five Brothers' Submission of Falsified "True Second Bids"**

74.     Pursuant to HUD regulations, bids submitted to HUD must be independent and competitive.  *See* HUD Housing Handbook 4330.4 (FHA Single Family Insurance Claims), at 2-28 (emphasis added).

---

[6] In fact, in 2011, another Five Brothers contractor, USA Modernization, Inc. ("USA Modernization"), brought suit against Five Brothers, in part, for this very practice. *See USA Modernization, Inc. v. Five Brothers Mortgage Servs. & Securing, Co*, Case No. 2011-003559-CZ (Mich. Super. Ct., Macomb County).  USA Modernization alleged that Five Brothers fraudulently increased its bids and relayed those fraudulent bids to the mortgagees, which rejected the fraudulently inflated bids and requested second bids.  Five Brothers submitted second bids that were "lower" (as a result of Five Brothers' manipulation of USA Modernization's original bid), which the mortgagees ultimately accepted.  USA Modernization alleged that, as a result of Five Brothers' fraudulent bid practices, it lost out on being hired for a multitude of preservation jobs and lost in excess of $3 million in the 14 months that USA Modernization worked for Five Brothers.

75.     Five Brothers' bidding practices, however, were anything but "independent and competitive." Instead, Five Brothers utilized a sham bidding process in which it would require contractors to bid against themselves in order to obtain what Five Brothers referred to as "true second bids." Indeed, Five Brothers would even require the contractors to use different letterheads and company names to give the appearance of independent bids.

76.     In or about July 2009, Ms. Taylor submitted on PMT letterhead a bid to demolish a house on an FHA-insured property (located at 10647 Sprinkle Road, Pavilion Township, MI). In or about August 2009, Wendy Colucci, a representative of Five Brothers, contacted Ms. Taylor and asked her to complete a "true second bid" under another company's letterhead. At Five Brothers' direction, Ms. Taylor submitted on the letterhead of FAS Solutions (a fictitious entity name) a second bid in a higher amount to demolish the same house. Ms. Taylor subsequently was asked to re-bid the job with detailed itemization and, on or about October 1, 2009, Ms. Taylor submitted on PMT letterhead an itemized bid to demolish the same house, which included detailed line items for demolishing the house, shed, hauling of debris, filling in basement with dirt and any permits necessary to complete the work. On or about October 15, 2009, Ms. Colucci of Five Brothers requested that, once again, Ms. Taylor submit a "true second bid" on the letterhead of FAS Solutions (a fictitious entity name) so that it would appear that there were two competing bids. In response, Ms. Taylor submitted a "true second bid" to Five Brothers under FAS Solutions' letterhead in an amount higher than the itemized bid submitted on October 1, 2009. On or about January 22, 2010, Five Brothers issued an Order to Ms. Taylor indicating that Sterling Bank (the mortgage servicing client) had requested itemization of Ms. Taylor's October 1 bid submitted on behalf of PMT, which she then provided to Five Brothers on

the following day (January 23, 2010) and which was more particularly broken down by specific

tasks.  On or about January 27, 2010, Five Brothers issued a Second Bid Order to FAS Solutions

indicating that Sterling Bank had requested itemization of FAS Solutions' "true second bid."  At

the request of Five Brothers, on FAS Solutions letterhead, Ms. Taylor submitted an itemized and

revised "true second bid" on FAS Solutions letterhead -- with the same line items as the PMT bid

submitted on January 23, 2010 but with a higher bid amount.  On or about April 13, 2010, Five

Brothers issued a Final Approval Order to Ms. Taylor approving the line item totals from the bid

that was submitted on January 23, 2010 and which, as a result of Five Brothers' bid manipulation

and fraud, appeared to the servicer (Sterling Bank) be the lowest bid achieved as a result of a

competitive bidding process.  Of course, nothing could be further from the truth - as Five

Brothers had used its "true second bid" scheme in order to defraud the bank customer and

thereby defrauded the ultimate customers (*i.e.*, the United States Government).

       77.     Five Brothers, U.S. Bank and other similarly situated financial institutions, either

directly or indirectly, submitted similarly manipulated and false bids to the GSEs and other

Government entities besides HUD and profited from the submission of these false claims.

       **D.**     **Five Brothers Submitted the Highest Bids to HUD, the GSEs and Other
Government Entities**

       78.     Through its bid submissions, Five Brothers caused HUD, the GSEs and other

Government entities to pay excessive amounts given the availability of alternative bids because

Five Brothers would request second bids from its contractors and submit, through U.S. Bank, the

highest of the contractors' bids (or unreasonable high bids) to HUD, the GSEs and other

Government entities.

79.     In corresponding with other contractors that worked for Five Brothers, Relator discovered Five Brothers' frequent practice of accepting the highest bid to seek maximum reimbursement from HUD, the GSEs and other Government entities.  For example, on November 10, 2011, another contractor, Robert Taylor, bid $12,600 to demolish a house and a garage on an FHA-insured property located at 11494 Wilson Road, Nunica, MI 49448.  On March 2, 2012, Relator bid $13,000 to demolish the same house and a garage on said property.  PMT also submitted a bid for demolition in the amount of $14,500.  Five Brothers ultimately accepted PMT's bid, which was the higher of the three bids, and submitted the higher bid to HUD through U.S. Bank.

80.     On another occasion, on February 4, 2011, PMT submitted a bid for $3,900 to remove debris on a property located at 12643S 18th Street, Vicksburg, MI 49097.  A second contractor, Amy LaDere, submitted a bid for debris removal in the amount of $4,350.  Five Brothers accepted Ms. LaDere's bid, which was the higher of the two bids and submitted the higher bid to HUD through U.S. Bank.

81.     Five Brothers, U.S. Bank and other similarly situated financial institutions submitted similarly manipulated and false bids to the GSEs and other Government entities besides HUD and profited from the submission of these false claims.

### E.     Five Brothers Misrepresents Approvals By HUD, GSEs and Other Government Entities to Contractors

82.     In further manipulating the bidding process for its own financial gain, Five Brothers misrepresents HUD approvals to contractors by altering the bid approved by HUD and inserting "HUD language" (*e.g.*, "HUD adjusted bid" or "HUD lowered amount") in the return

-27-

work order to get a contractor to perform work at a lower price.

83.    For example, a contractor who submitted bids to Five Brothers received the

following bid approval email with a purported adjusted amount from Five Brothers on December

2, 2011:

> Your bid for, MOLD-BLEACH SCRUB APPROX. 500 SQ FT
> BASEMENT WALLS TO REMEDIATE MOLD–CAUSE BY SEEPING,
> MUST BE COMPLETED PRIOR TO DRYLOCKING WALLS-WILL
> TAKE 5 GALLONS OF BLEACH, 5 GALLONS WATER, SCRUB
> BRUSHES, WILL TAKE 2 MEN 4 HOURS, for Work Order # 873719
> has been adjusted to the lowered amount of: $90.00.  Your original bid
> was $450.00
>
> If you cannot complete this work please contact your state
> representative within 24 hours.  Failure to notify your rep may
> result in a monetary loss.
>
> The reason is: see attached govt cost estimate in p260
>
> *     *     *
>
> This is not an order!  This is just a message explaining why your
> bid was lowered.  Always wait for an actual order before
> proceeding with any work.

84.    In Relator's experience and to Relator's knowledge, whenever a contractor

receives a "HUD adjustment," Five Brothers has never provided any documentation from HUD,

any of the GSEs or the Government to justify such adjustments, despite indicating attachment of

"[Government] cost estimates in P260" that explain the bid adjustments.  Indeed, when asked to

provide such information, Five Brothers employees routinely has refused to do so, responding

that P260 information is not for contractors and is thus not available to them.

85.    Upon information and belief, Five Brothers independently makes these

adjustments, unbeknownst to HUD, the GSEs and other Government entities, in order to deprive

-28-

contractors of payments and enrich itself.

86.     As a result of these practices, HUD, the GSEs and other Government entities never receive a fair representation of what contractors are actually being paid.

87.     After receiving multiple messages from Five Brothers of these "HUD adjustments" or "Government adjustments," Relator began comparing work orders for similar items/work done within a short time period and observed inconsistency and wide variation in how Five Brothers indicated HUD had adjusted his bid amounts.  Relator believes that neither HUD, the GSEs nor other Government entities is adjusting the price at all and that, in fact, Five Brothers is making the adjustments itself prior to giving approval to the contractor.

88.     Examples of work orders where Relator and PMT placed bids and received inconsistent pricing from Five Brothers include:

**Capping An Interior Gas Line**

| Work Order No. | Date | Purported HUD Price Per Interior Gas Line, Conveyed to Relator by Five Brothers | Action by HUD |
|---|---|---|---|
| 832267 | 9-5-11 | $2.00-adjusted amount | HUD adjusted |
| 843303 | 9-23-11 | $10.00-adjusted amount | HUD adjusted |
| 936223 | 1-12-12 | $15.00-bid amount approved | HUD accepted |
| 968836 | 2-13-12 | $25.00-bid amount approved | HUD accepted |

**Installing Missing Window Locks**

| Work Order No. | Date | Purported HUD Price Per Installing Missing Window Locks, Conveyed to Relator by Five Brothers | Action By HUD |
|---|---|---|---|
| 794598 | 7-10-11 | Install 6 window locks for $180.00 ($30.00 each) | HUD adjusted |
| 831764 | 9-4-11 | Install 4 window locks for $40.00 ($10.00 each) | HUD adjusted |
| 840788 | 9-18-11 | Install 4 window locks for $80.00 ($20.00 each) | HUD did not reduce |
| 872486 | 10-30-11 | Install 1 window lock for $25.00 | Please complete per cost estimator amount |
| 907056 | 12-16-11 | Install 1 window lock for $15.00 | HUD adjusted |

89.     To the best of Relator's knowledge, information and belief, Five Brothers is systematically misrepresenting HUD communications to its contractors, in an effort to reap even more of a profit from HUD than it should have absent this manipulation.

90.     Five Brothers, U.S. Bank and other similarly situated financial institutions similarly manipulated and falsified information regarding adjustments by the GSEs and other Government entities besides HUD and profited from this fraudulent conduct and the concomitant false claims.

**F.     Five Brothers' Knowledge of the Fraud**

91.      Five Brothers knowingly increased contractors' bids and fraudulently provided them for payment to HUD, the GSEs and other Government entities.

92.     Five Brothers' senior management has been on notice of these practices since at

least December 2009 and likely well before that time, when Relator discussed the situation by

telephone with the President of Five Brothers, Defendant, Joseph Badalamenti a/k/a Joe Bada.

Relator also discussed these fraudulent practices with Five Brothers' senior management in

meetings on April 7, 2011, April 30, 2012 and May 4, 2012 at Five Brothers' headquarters in

Warren, MI.

G.   **U.S. Bank's Lack of Oversight and Failure to Implement Adequate Controls to Prevent and/or Detect Fraud**

93.     As indicated, HUD guidelines holds U.S. Bank liable for the acts of its property

preservation service contractors such as Five Brothers.  *See* Mortgagee Letter 91-49 (December

5, 1991), at 3.

94.     U.S. Bank was the entity that facilitated Five Brothers' bid submissions to HUD

and the reimbursements paid by HUD to Five Brothers.

95.     Upon information and belief, U.S. Bank knew about Five Brothers' fraudulent

practices and conspired with Five Brothers to present these fraudulent bids to HUD for

reimbursement, as alleged herein.

96.     Alternatively, by allowing "liaisons" (who were essentially Five Brothers

personnel) to facilitate the bid submission and reimbursement process between HUD and Five

Brothers, U.S. Bank completely failed to oversee and ensure that this process was free from fraud

and manipulation when it was required to do so.  Moreover, U.S. Bank failed to implement

adequate internal controls to detect and/or prevent the fraud that was perpetrated upon the

Government by Five Brothers.

97.     Such lack of oversight and failure to detect/prevent the fraud amounts to

deliberate ignorance or reckless disregard of the fraudulent nature of Five Brothers' claims that were presented to HUD for reimbursement.

98.     U.S. Bank was subject to the same or similar requirements with respect to bids submitted to the GSEs and other Government entities and similarly disregarded its duties of oversight and to detect and disclose Five Brothers' fraudulent bidding/billing practices.

99.     Upon information and belief, other financial institutions similarly situated to U.S. Bank, including, but not limited to, Bank of America, Ocwen Financial Corporation, Sterling Bank, Taylor, Bean & Whitaker, Towne Mortgage Company and, more recently, Wells Fargo & Company, have participated in, aided and abetted and otherwise permitted similar fraudulent bids to be submitted to HUD, the GSEs and other Government entities arising from Five Brothers' fraudulent practices and false claims.

## COUNT I
### (Against Five Brothers – Violations of the FCA)

100.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

101.    Through the conduct alleged herein, Five Brothers knowingly presented, or caused to be presented, to the United States false or fraudulent claims for payment or approval, including but not limited to improper claims made to HUD for preservation services performed on FHA-insured properties, as well as the GSEs and other Government entities.

102.    In so doing, Five Brothers acted knowingly; that is, Five Brothers (i) possessed actual knowledge that the claims for payment were false or fraudulent; (ii) acted in deliberate ignorance of the truth or falsity of the claims for payment; or (iii) acted in reckless disregard of

the truth or falsity of the claims for payment.

103.    By virtue of the act described herein, Five Brothers made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.

104.    In so doing, Five Brothers acted knowingly; that is, Five Brothers (i) possessed actual knowledge that the information, statements, and representations were false or fraudulent; (ii) acted in deliberate ignorance of the truth or falsity of the information, statements, and representations; or (iii) acted in reckless disregard of the truth or falsity of the information.

105.    By virtue of the acts described herein, Five Brothers conspired with one or more persons to present, or cause to be presented, to the United States false or fraudulent claims for payment or approval, and to make, use, or cause to be made or used, a false record or statement material to a false or fraudulent claim.

106.    The United States, whether directly or indirectly, contracted with and remitted payment to Five Brothers, unaware of the false nature of such claims.  Had it been aware of the false nature of such claims, the Government would not have contracted with Five Brothers or remitted payments to Five Brothers either directly or through U.S. Bank and other similar financial institutions.

107.    By reason of these actions and payments, the United States has been damaged in substantial amounts and Five Brothers should be required to pay such damages, and provide restitution in the amount of and disgorge all funds received from the Government during the relevant period.  The exact amount of such damages and monies is to be determined based upon further investigation and calculation of appropriate damages and relief.

## COUNT II
### (Against U.S. Bank and U.S. Bancorp – Violations of the FCA)

108.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

109.    Through the conduct alleged herein, U.S. Bank knowingly presented, or caused to be presented, to the United States false or fraudulent claims for payment or approval, including but not limited to improper claims made to HUD for preservation services performed on FHA-insured properties, as well as the GSEs and other Government entities..

110.    In so doing, U.S. Bank acted knowingly; that is, U.S. Bank (i) possessed actual knowledge that the claims for payment were false or fraudulent; (ii) acted in deliberate ignorance of the truth or falsity of the claims for payment; or (iii) acted in reckless disregard of the truth or falsity of the claims for payment.

111.    By virtue of the act described herein, U.S. Bank made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.

112.    In so doing, U.S. Bank acted knowingly; that is, U.S. Bank (i) possessed actual knowledge that the information, statements, and representations were false or fraudulent; (ii) acted in deliberate ignorance of the truth or falsity of the information, statements, and representations; or (iii) acted in reckless disregard of the truth or falsity of the information.

113.    By virtue of the acts described herein, U.S. Bank conspired with one or more persons to present, or cause to be presented, to the United States false or fraudulent claims for payment or approval, and to make, use, or cause to be made or used, a false record or statement material to a false or fraudulent claim.

114.    The United States, whether directly or indirectly, contracted with and remitted payment to U.S. Bank, unaware of the false nature of such claims.  Had it been aware of the false nature of such claims, the Government would not have contracted with U.S. Bank or remitted payments to U.S. Bank.

115.    By reason of these actions and payments, the United States has been damaged in substantial amounts and U.S. Bank should be required to pay such damages, and provide restitution in the amount of and disgorge all funds received from the Government during the relevant period.  The exact amount of such damages and monies is to be determined based upon further investigation and calculation of appropriate damages and relief.

## PRAYER

Wherefore, Relator respectfully requests that this Court enter judgment against Defendants as follows:

(a)    That the United States be awarded damages and corresponding relief in the amount of each and every false or fraudulent claim, including all funds received by Defendants from the United States Government during the relevant period, multiplied as provided for in 31 U.S.C. § 3729(a), plus civil penalties and statutory damages, including treble damages, to the maximum extent allowed under the False Claims Act;

(b)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator's counsel necessarily incurred in bringing and pressing this case;

(c)    That Relator be awarded the maximum amount allowed pursuant to the False Claims Act; and

-35-

(d)     That the United States be granted such other and further relief as the Court deems

just and proper.

## JURY TRIAL DEMANDED

Relator, on behalf of the United States of America, hereby demands a jury trial

on all claims so triable.

Dated:  May 13, 2014                    Respectfully submitted,

                                        SHEPHERD, FINKELMAN, MILLER
                                        & SHAH, LLP

                                        _____
                                        James C. Shah
                                        475 White Horse Pike
                                        Collingswood, NJ 08107
                                        Telephone: 856/858-1770
                                        Facsimile:  866/300-7367
                                        Email: jshah@sfmslaw.com

                                        James E. Miller
                                        Laurie Rubinow
                                        Karen M. Leser-Grenon
                                        SHEPHERD, FINKELMAN, MILLER
                                          & SHAH, LLP
                                        65 Main Street
                                        Chester, CT 06412
                                        Telephone: 860/526-1100
                                        Facsimile: 866/300-7367
                                        Email: jmiller@sfmslaw.com
                                               lrubinow@sfmslaw.com
                                               kleser@sfmslaw.com

-36-

Thomas E. Duckworth
Monique Olivier
DUCKWORTH PETERS LEBOWITZ
OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/433-0333
Facsimile: 415/449-6556
Email: tom@dplolaw.com
       monique@dplolaw.com

Rose F. Luzon
Valerie L. Chang
SHEPHERD, FINKELMAN, MILLER
  & SHAH, LLP
401 West A Street, Suite 2350
San Diego, CA 92101
Telephone: 619/235-2416
Facsimile: 866/300-7367
Email: rluzon@sfmslaw.com
      vchang@sfmslaw.com

**Counsel for Relator And**
**On Behalf of The United States of America**